BRENDA GRAVITTE, PLAINTIFF v. MITSUBISHI SEMICONDUCTOR AMERICA, INC., DEFENDANT

No. 9114SC967

(Filed 6 April 1993)

1. **Handicapped Persons § 1 (NCI4th)— back problems—inability to do particular job—no major life activity limited—plaintiff not handicapped—employer not required to reasonably accommodate "handicap"**

   Plaintiff was not a "handicapped person" within the meaning of N.C.G.S. § 168A-1 *et seq.* (the "North Carolina Handicapped Persons Protection Act"), and the trial court therefore properly granted defendant's summary judgment motion on plaintiff's claim that defendant employer failed to make reasonable accommodation to her handicap in violation of N.C.G.S. § 168A-4, since plaintiff would be unable to show at trial that her physical impairment limited a "major life activity" where evidence in the record indicated that plaintiff experienced some pain in her lower back and that she was under a physician's order not to lift more than 40 pounds, to avoid repetitive bending at the waist, and to avoid prolonged sitting or standing without changing position; the activities which caused plaintiff pain and discomfort were not those essential tasks one must perform on a regular basis in order to carry on a normal existence; and plaintiff was not "handicapped" merely because she could not perform one particular type of job. N.C.G.S. § 168A-3(4)(i).

2. **Labor and Employment § 63 (NCI4th)— at-will employee—resignation—no claim for wrongful discharge**

   The trial court properly granted defendant's motion for summary judgment on plaintiff's claim for wrongful discharge where plaintiff, an at-will employee, tendered her resignation after asking to be transferred to another position and being

GRAVITTE v. MITSUBISHI SEMICONDUCTOR AMERICA

[109 N.C. App. 466 (1993)]

told that none was currently available, since a plaintiff who voluntarily resigns defendant's employ cannot bring a claim for wrongful discharge.

**Am Jur 2d, Master and Servant §§ 27-33.**

**Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.**

**Modern status as to duration of employment where contract specifies no term but fixes daily or longer compensation. 93 ALR3d 659.**

**Right of corporation to discharge employee who asserts rights as stockholder. 84 ALR3d 1107.**

**Reduction in rank or authority or change of duties as breach of employment contract. 63 ALR3d 539.**

**Employer's termination of professional athlete's services as constituting breach of employment contract. 57 ALR3d 257.**

Appeal by plaintiff from order entered 15 May 1991 by Judge J.B. Allen, Jr., in Durham County Superior Court. Heard in the Court of Appeals 13 October 1992.

*McCreary & Read, by Daniel F. Read, for plaintiff-appellant.*

*Poyner & Spruill, by Cecil W. Harrison, Jr. and Laura ·Broughton Russell, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals from summary judgment dismissing her claims against defendant for violation of G.S. § 168A-1 *et seq.* (the "North Carolina Handicapped Persons Protection Act") and for wrongful discharge. We affirm the trial court.

The pleadings, depositions, answers to interrogatories, affidavits, and other materials ·before the trial court indicate the following:

While working for defendant in 1988, plaintiff sustained a back injury and subsequently took several leaves of absence. During her absence, plaintiff received worker's compensation benefits and defendant paid her medical bills. According to plaintiff, defendant

"put me on leave until their doctor, the physical therapist, and my doctor agreed that it was okay for me to come back."

By letter dated 20 March 1990, Dr. Peter Bronec (plaintiff's physician) advised defendant that plaintiff could return to work if certain restrictions were followed. In pertinent part his letter provides:

> Brenda Gravitte is suffering from chronic musculoligamentous strain of the lumbar spine which is also associated with mild degenerative disease o[f] the lumbar spine. This is usually the result of excessive stress to the lower lumbar region as is encountered with heavy lifting and repetitive bending at the waist. She is able to do well as long as she stays within certain activity restrictions. Specifically, I have recommended that she not lift more than 40 pounds, avoid repetitive bending at the waist, and avoid prolonged sitting or standing in one place . . . . I expect her to remain under these restrictions permanently. As long as she can remain within these restrictions, I see no reason why she cannot work.
>
> . . . .
>
> It is my understanding that there is an aspect of her current job which requires more lifting than the restrictions. This seems to have been giving her the most trouble. I understand . . . that this weight could be broken up into smaller weights. However this has apparently caused some discord among the other employees, therefore Brenda has felt compelled to lift the entire weight. If this problem cannot be rectified then she would not be able to continue performing that job. If there is no other job currently available under these guidelines, than [sic] it might be appropriate to place her on medical leave until such time that a satisfactory job becomes available. I do not feel that any length of medical leave will allow her to return to a job which exceeds these restrictions as she has proven in the past.

On 6 April 1990 plaintiff returned to her position as an Operator in defendant's Plating Department. Before doing so, plaintiff, as well as Sheila Barnes, her supervisor, and E. L. Fricke, defendant's human relations supervisor, signed a "Memorandum of Understanding" which provided *inter alia* that plaintiff's return was "contingent upon [her] compliance with the stipulations as set down

by Dr. Peter Bronec" and listed several "restrictions and conditions" which comport with those set forth in the physician's letter.

Plaintiff thereafter sought transfer to other positions, but was told there were no openings. On 18 May 1990 she resigned. In her letter of resignation plaintiff stated:

> It is with regret that I am turning in my two weeks' notice. As you and human resources are aware and have been, the medical problems that I have had in plating [sic]. After coming back from medical leave this last time I was informed that modifications were made in plating to accom[mo]date my situation with working in the plating department. The only modifications were two temporary people were added, only one remains. One was discharged 4-26-90. With the amount of work that we have it's hard for the other operator to stop what she's doing and do the heavy part of my job. Also if I lift one magazine at the time to load the oven or carry it . . . to plating the increased amount of twisting at the waist gives me a lot of pain in my back. I've discussed this with Dr. Bronec and he has advised me that if the problems with this particular job cannot be rectified then if the company does not see fit to put me in another job that is not so strenuous on me that I should seek employment else where [sic]. As I have stated I've been through channels and ask[ed] for something else but have been told there is nothing else in the plant for me to do. I had planned to stay with MSAI until retirement, being as I have been employed here 5 years [on] May 13, 1990. But my health will not permit me to remain in this job, and the company says there's nothing else that I can do.

Plaintiff contends the trial court erred by granting defendant's motion for summary judgment. Under Rule 56(c), N.C. Rules of Civil Procedure, summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the burden of establishing the lack of any triable issue, *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992), and may meet this burden by (1) proving that an essential element of the opposing party's claim

is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense. *Roumillat* at 63, 414 S.E.2d at 342.

I.

[1] In her first claim, brought under the North Carolina Handicapped Persons Protection Act, G.S. § 168A-1, *et seq.* [hereinafter the Act], plaintiff alleges that she is a "qualified handicapped person" within the meaning of the Act and that defendant failed to make reasonable accommodation to her handicap in violation of G.S. § 168A-4.

The question of whether one is a "qualified handicapped person" under the Act must be preceded by a determination that one is a "handicapped person." G.S. § 168A-3(9). The Act defines a "handicapped person" as "any person who (i) has a physical or mental impairment which *substantially limits one or more major life activities*; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. G.S. § 168A-3(4) (emphasis added). "Major life activities" are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning." G.S. § 168A-3(4)b.

In *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 388 S.E.2d 134 (1990), the North Carolina Supreme Court recently considered what constitutes a "major life activity" under the Act. In *Burgess*, the plaintiff was discharged from his position as a short order cook after testing positive for the Human Immunodeficiency Virus (HIV), the agent currently recognized as responsible for Acquired Immune Deficiency Syndrome (AIDS). Although the plaintiff was asymptomatic for the AIDS disease itself, he nevertheless contended that, because he was discharged due to his affliction, he was regarded as having an impairment that limited a major life activity, "working." In upholding the trial court's grant of defendant's motion to dismiss made pursuant to Rule 12(b)(6), N.C. Rules of Civil Procedure, the *Burgess* Court noted that the Act is narrower in scope than the federal act which specifically encompasses "working." *Burgess* at 213-214, 388 S.E.2d at 138-139. "As an asymptomatic carrier of HIV, plaintiff has failed to show that he has any condition that would substantially limit his ability to perform any of the physical or mental tasks listed in the . . . Act as major life activities." *Id.* at 214, 388 S.E.2d at 139. The

Court also rejected the argument that (1) the ability to bear a healthy child or (2) the ability to engage in sexual relationships constitute "major life activities." *Id.* "Major life activities" encompass only those "essential tasks one must perform on a regular basis in order to carry on a normal existence." *Id.*

Under *Burgess* then, plaintiff's condition must limit more than her mere ability to work a particular job in order for it to affect a "major life activity." The functions which are limited must be those listed in G.S. § 168A-3(4)b or "of the same nature as those listed." *Burgess* at 214, 388 S.E.2d at 139.

Evidence in the record here indicates that plaintiff experienced some pain in her lower back and that she was under a physician's order not to "lift more than 40 pounds, [to] avoid repetitive bending at the waist, and [to] avoid prolonged sitting or standing in one place without the opportunity to move around and change position." In her deposition, plaintiff asserted that repetitive lifting of objects weighing 40 pounds did not bother her, but rather it was the repetitive "twisting, turning, reaching, stooping, bending." Of further note is a physician's evaluation from 29 May 1990, 11 days after plaintiff's employment ceased, that "[s]ince she has been out of work . . . the discomfort is slowly improving." This physician assessed plaintiff's condition as "[m]ild recurrent low back pain. Probable musculoligamentous strain." Based upon the foregoing, we conclude that plaintiff at trial will be unable to produce evidence in support of an essential element of her claim, that is, that her physical impairment limits a "major life activity" so as to bring her under the purview of G.S. § 168A-3(4)(i). The activities which cause plaintiff pain and discomfort simply are not those "essential tasks one must perform on a regular basis in order to carry on a normal existence." Plaintiff is not "handicapped" merely because she cannot perform one particular type of job. We further note there is no evidence indicating plaintiff is a "handicapped person" as defined in either G.S. §§ 168A-3(4)(ii) or (iii). Since plaintiff is not a "handicapped person" as contemplated in the Act, the trial court properly granted defendant's motion for summary judgment as to plaintiff's first claim.

## II.

[2] Plaintiff's second contention is that the trial court erred in dismissing her claim for wrongful discharge. We disagree.

GRAVITTE v. MITSUBISHI SEMICONDUCTOR AMERICA

[109 N.C. App. 466 (1993)]

In North Carolina, the general rule is that, absent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association at any time and without reason. *Salt v. Applied Analytical, Inc.*, 104 N.C.App. 652, 655, 412 S.E.2d 97, 99 (1991), *disc. review denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). This typical working relationship is known as "employment-at-will." It is uncontroverted that plaintiff was an "at-will" employee.

An exception to the employment-at-will doctrine exists where an employee is discharged for "an unlawful reason or purpose that contravenes public policy." *Coman v. Thomas Manufacturing Co., Inc.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989), *quoting Sides v. Duke Hospital*, 74 N.C.App. 331, 342, 328 S.E.2d 818, 826, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). Plaintiff argues this exception is applicable to her. We disagree.

To proceed under this exception, plaintiff must allege facts which indicate that she was in fact "discharged." If plaintiff voluntarily resigned defendant's employ, she cannot bring a claim for wrongful discharge.

Here, plaintiff *tendered her resignation* after asking to be transferred to another position and being told that none was currently available. There is no evidence that she was ever subjected to a reduction in wages, and there is no indication that defendant suggested, much less threatened, that she would be terminated for any reason. Instead, the record shows: (1) that defendant paid plaintiff workers' compensation benefits including medical bills and disability compensation; and (2) that defendant attempted to accommodate plaintiff's medical condition. On these facts, it is clear plaintiff was not "discharged" by any act of defendant. Accordingly, the trial court properly granted defendant's motion for summary judgment on plaintiff's claim for wrongful discharge.

The trial court's order granting defendant's motion for summary judgment is affirmed.

Judges EAGLES and ORR concur.