Andy VAUGHAN, Plaintiff,

v.

HARVARD INDUSTRIES, INC., and Hayes–Albion Corporation, Defendants.

No. 94–2936.

United States District Court,
W.D. Tennessee,
Western Division.

May 10, 1996.

Arnold Goldin, Law Offices of Arnold Goldin, Memphis, TN, Sandra Isom, Dowden & Zdancewicz, Memphis, TN, for Plaintiff.

Richard T. Dawson, Harvard Industries, Inc., Tampa, Florida, Jonathan E. Kaplan, Kiesewetter, Kaplan & Schwimmer, Memphis, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, filed January 31, 1996. For the reasons stated below, the motion is GRANTED.

Plaintiff Andy Vaughan brought this action against employer Harvard Industries and Hayes–Albion Corporation, alleging discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213, and wrongful retaliatory discharge for filing of a worker's compensation claim.[1] Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, citing four grounds: (1) plaintiff failed to establish a prima facie case of discrimination under the ADA; (2) the ADA does not require defendants to provide plaintiff with alternative employment as an accommodation; (3) plaintiff failed to present a prima facie case of worker's compensation retaliatory discharge; and (4) plaintiff's separation was for legitimate, non-retaliatory reasons. The Court finds that plaintiff failed to establish a prima facie case of discrimination under the ADA, and failed to establish a prima facie case of wrongful retaliatory discharge.

## I. BACKGROUND

Drawing all inferences in favor of plaintiff, the non-moving party, and accepting his factual allegations as true for purposes of this

---

1. In his complaint, plaintiff also raised a claim for violation of the Rehabilitation Act of 1973 (Vocational Rehabilitation Act), 29 U.S.C. § 791 et seq., and a breach of contract claim. On April 10, 1995, plaintiff and defendants stipulated to a dismissal with prejudice of both claims, and on April 13, 1995, the Court dismissed these claims, leaving only plaintiff's ADA and retaliatory discharge claims.

discussion, the facts of this case are as follows.

On June 22, 1981, at age seventeen, plaintiff was employed by defendant Hayes–Albion Corporation at its production facility, and on December 10, 1993, plaintiff was terminated. On March 27, 1992, plaintiff sustained an on-the-job injury. At that time, plaintiff was employed as a lead die cast setup man. On April 9, 1992, plaintiff sought medical treatment, and in accordance with doctor's instructions, plaintiff was off work from that date until May 4, 1992. During this period, plaintiff received approximately $262.20 per month in temporary total disability worker's compensation benefits (TTD). Plaintiff returned to work without restrictions, but in August, ceased work, again pursuant to doctor's instructions, received additional medical treatment, and resumed receipt of TTD benefits. On January 11, 1993, plaintiff returned to work without restrictions, but complained of back pain and upon instructions from his doctor, did not work from January 12–15, 1993. On January 19, 1993, plaintiff requested additional time off for medical reasons from Bob Ennis, Harvard's Human Resource Manager. Pursuant to this request, plaintiff was placed on voluntary layoff status, for which he received unemployment benefits. During this period, plaintiff sought additional medical treatment, and was placed on temporary disability status again. As a consequence, plaintiff ceased receipt of unemployment benefits, and received TTD payments.

On January 25, 1993, Ray Edwards was placed into the second shift lead man position, and continued in this position after plaintiff resumed his former position of lead die cast setup man. On June 28, 1993, plaintiff returned to work with medical restrictions of a thirty pound repetitive lift limit, and a five to ten minute break every hour. With the approval of his supervisors, plaintiff also ceased to perform any tasks that caused him pain. On September 7, 1993, plaintiff again took time off from work, and on October 11, 1993, plaintiff returned to work with a work release, with a twenty pound lifting and thirty minute standing restriction from his doctor. The release indicated that these restrictions were permanent, and that plaintiff could not do the job he performed previously, but would need to do less than before.

Upon plaintiff's return to work, Ennis told plaintiff that the company had no position available, that plaintiff was "too big of a risk," and thus, in lieu of reinstating plaintiff, the company would continue paying worker's compensation benefits to plaintiff. On December 9, 1993, plaintiff received a worker's compensation settlement of $70,932, representing a sixty-five percent permanent partial disability to the body as a whole. At deposition, plaintiff testified that he had difficulty holding his thirty pound baby, standing for longer than thirty minutes at a time and changing a die, the latter involving pushing and pulling, stress to his back, and numbness in his leg. Plaintiff also testified, and states in his response to defendants' summary judgment motion, that he can perform all the essential functions listed in the job description for die cast setup, with the exception of lifting, bolting, and adjusting.[2] Plaintiff tes-

---

2. Defendants Job Description for Die Cast Setup states the following:

SUMMARY: Set up die casting machine to cast parts such as automobile trim, carburetor housings, and motor parts from nonferrous metals such as zinc, aluminum, or magnesium by performing the following duties.

ESSENTIAL DUTIES AND RESPONSIBILITIES include the following. Other duties may be assigned.

Lifts specified die sections into machine.

Bolts die section in position and adjusts stroke of ram. Connects water hose to cooling system of die. Preheats die sections with torch or electric heater.

Turns valves and sets dial to regulate flow of water circulating through die and to control speed of machine, based on size and structure of part being cast and type and temperature of metal being used.

Trouble shoot small mechanical problems: such as water leaks, thermolator leaks, fill with oil, setting of auto sprayer, cycling setting. Make sure all safety devices are in proper working order.

Carry first and last shot to line inspectors to check Quality.

Relieve D/C operators for lunch break.

Give instruction to D/C operators on way to properly run D/C machine and to clean work area at the end of their shift.

tified that, while working as a lead die cast setup man, he was required to perform all of the duties detailed in the job description, in addition to the supervisory requirements of the lead position.

Upon returning to work with restrictions, plaintiff was placed in a temporary light duty position. This position was created for plaintiff, and included only the inspecting and adjusting duties, and not any of the other essential functions of the job. During the period from October through December 1993, defendants had no openings with plaintiff's restrictions; further, defendants have never created a light duty position for any employee.

Plaintiff's separation notice, dated December 14, 1993, states as reason for separation "lack of work." Specifically, it states, "off on work related injury. Release to light duty. No light duty work available." (Ex. 4.)

On June 1, 1994, Ennis submitted a position statement to the EEOC, addressing plaintiff's EEO claim of discrimination and retaliation:

> From 12/10/03 to 4/19/94 we never heard from Vaughan. He made no effort to report for work and his own behavior confirmed that he in fact voluntarily quit. Harvard Industries accommodated Vaughan's restrictions. He claimed he could not perform the light duty or special assignment work made available to him in accordance with his own doctor's stated restrictions, as it was hurting his back. He then voluntarily quit by failing to report for work and made no effort to further discuss his situation.... If Vaughan wanted to work within his restrictions he could have continued working at Harvard Industries. He made no request for additional accommodation and quit our company.

(Ex. 3.)

Following his separation from defendants, plaintiff has worked as a security guard and hung vinyl siding. Plaintiff only worked for a short time in the latter position due to his injury. Plaintiff currently drives a cement truck. Plaintiff testified that his back causes him pain after about one hour of driving a car. Plaintiff's current duties as a cement truck driver include waiting for a load to be ordered, driving a manual shift truck, filling his water barrel with a hose, obtaining the ticket, hooking up extension chutes which weigh about thirty pounds, standing or sitting in the truck while concrete is poured, operating levers, washing off the chutes, and climbing up the ladder on the truck. Plaintiff uses the rails to accomplish the latter; he has some difficulty with his leg and back when using the clutch in the truck extensively and lifting the chutes off the truck.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the ab-

---

Work with the Quality department and Tool Room on various problems.

PHYSICAL DEMANDS: The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to stand; walk; use hands to finger, handle, or feel objects, tools, or controls; reach with hands and arms; and talk or hear. The employee frequently is required to climb or balance and stoop, kneel, crouch, or crawl. The employee is occasionally required to taste or smell.

The employee must regularly lift and/or move up to 50 pounds and occasionally lift and/or move more than 100 pounds.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (Plaintiff's Opposition.) (Ex. 2.)

All numbered exhibits cited in this Order refer to exhibits accompanying Plaintiff's Opposition, filed March 6, 1996; all lettered exhibits refer to those cited by defendants' Reply Memorandum in Support of Defendant's Motion for Summary Judgment, filed March 26, 1996.

sence of a genuine issue of material fact," *id.* at 323, 106 S.Ct. at 2553, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

Pursuant to Rule 56(e), when confronted with a properly supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

## III. ANALYSIS

### A. *Plaintiff's ADA Claim*

■ The ADA, 42 U.S.C. § 12101 *et seq.,* prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a violation under the ADA, three elements must be satisfied: (1) plaintiff must have a "disability"; (2) plaintiff must be "qualified" for the position; and (3) defendant's termination of plaintiff must constitute unlawful "discrimination" based on the disability. *See Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995); *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995); *Tyndall v. Nat'l Educ. Centers, Inc. of Calif.,* 31 F.3d 209, 212 (4th Cir.1994). *Accord Parker v. Metropolitan Life Ins. Co.,* 875

F.Supp. 1321, 1326 (W.D.Tenn.1995) (McCalla, J.).

■ To proceed with a claim under the ADA, plaintiff must meet the "threshold burden" of showing that he is a disabled individual within the meaning of the ADA. *See Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1453–54 (7th Cir.1995), *citing Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1248 (6th Cir.1985) (decided under the Rehabilitation Act, 29 U.S.C. § 706(7)(B)(i)). Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). The Act also considers an individual to be disabled if he has a record of an impairment that substantially limits one or more of her major life activities, or is regarded as having such an impairment. 42 U.S.C. § 12102(2)(B)–(C).

The ADA does not define "major life activities"; however, its regulations, promulgated by the Equal Employment Opportunity Commission (EEOC) define "major life activities" as the basic activities that the average person can perform with little or no difficulty, such as "walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means either the inability to perform a major life activity, or a significant restriction on the ability to perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1).

■ According to the EEOC regulations, in determining whether an individual is substantially limited in a major life activity, a court should consider: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) its long term impact. 29 C.F.R. § 1630.2(j)(2). The court must also consider whether the plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in varied classes." 29 C.F.R. § 1630.2(j)(3)(i). Whether a particular impairment constitutes a disability depends less on the name or diagnosis of the impairment than it does on the effect the impairment has on a particular individual. *Chandler v. City of Dallas,* 2 F.3d 1385, 1386 (5th Cir.1993)

("[T]he effect of a given type of impairment, both on major life activities in general and on a person's ability to perform specific tasks, can vary widely from individual to individual."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

▮▮ Citing the Senate Report, plaintiff argues that the activities listed in the EEOC regulations are "not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching." Senate Report at 22; House Labor Report at 52; House Judiciary Report at 28, cited in *Americans with Disabilities Handbook,* Published by EEOC at DOJ, October 1992, EEOC–BK–19, at p. I–27; *EEOC's Technical Assistance Manual,* I–2.2(a)(ii). Based on this Report, plaintiff maintains that a lifting restriction, specifically that suffered by plaintiff, is covered under the ADA. However, the language plaintiff cites from the Report was not included by Congress in the language of the ADA, nor was it included in the EEOC's final Rules and Regulations; thus, it cannot provide guidance in this matter.

Defendants dispute that plaintiff's injury substantially limits major life activities. Defendants cite case law in support of their position. *See Lamury v. Boeing Co.,* 1995 WL 643835 *5 (D.Kan.1995) (finding injured worker with a thirty pound lifting restriction, and restricted use of power tools, repetitive arm activity, and small hand tools, not "disabled" under the ADA, because, otherwise, "virtually any impairment could be considered a disability under the ADA"); *Aucutt v. Six Flags Over Mid–America,* 869 F.Supp. 736 (E.D.Mo.1994) (finding that employee suffering from high blood pressure with a twenty-five pound lifting restriction not "disabled" under the ADA); *Williams v. Avnet, Inc.,* 910 F.Supp. 1124 (E.D.N.C.1995) (finding that manual punch press operator with twenty-five pound lifting restriction, limited ability to push and pull, and a disability rating in other proceedings of five percent permanent partial disability to the back, not "disabled" under the ADA); *O'Dell v. Altec Industries, Inc.,* 1995 WL 611341 (W.D.Mo. 1995) (finding that plaintiff with frequent lifting restriction of thirty-five pounds, and occasional lifting restriction of fifty pounds, not "disabled" under the ADA); *Lowe v. Angelo's Italian Foods, Inc.,* 1994 WL 675027 (D.Kan.1994) (finding that plaintiff who could not carry anything greater than fifteen pounds, could not stoop or bend, and who was required to sit periodically, not "disabled" under the ADA); *Otis v. Canadian Valley–Reeves Meat Co.,* 884 F.Supp. 446 (W.D.Okla.1994) (finding that temporary lifting restriction of twenty-five pounds and permanent lifting restriction of seventy pounds did not constitute "disabled" under the ADA); and *Czopek v. General Electric Co.,* 1995 WL 374036 (N.D.Ill.) (finding that plaintiff with twenty pound lifting restriction not "disabled" under the ADA.)

▮ Plaintiff counters that the case law cited by defendants is distinguishable from the present case, but offers no case law of his own in support of his claim that he meets the definition of disability under the Act. While disability claims must be considered on a case to case basis, *Lamury* is significant because it involves restrictions and circumstances similar to those in the present case. The plaintiff in *Lamury* argued that her thirty pound lifting and tool use restrictions constituted a disability; however, the Court disagreed, noting that she was capable of performing routine life tasks, and of working in a food service department, with restrictions. The court drew a distinction between a medical impairment and a disability under the ADA,

> Physical impairment alone is not a disability within the meaning of the ADA. A plaintiff claiming a work impairment under the ADA must demonstrate not only the severity of an impairment, but also provide evidence of his vocational training, the geographic area to which he has access, or the number of type of jobs demanding similar training so as to establish that he is substantially impaired in his ability to perform a spectrum of potential positions.

*Id.* at *4, *5. Plaintiff states that he is unable to perform jobs presently available in the Ripley, Tennessee area, but provides no evidence to support this contention, nor any demographic vocational evidence to support his claim generally. Plaintiff also gives no

evidentiary support for his statement that *Lamury*'s "narrow reading of the term [major life activity] contravenes the legislative intent" of the ADA. (Plaintiff's Opposition, 16.)

■ Plaintiff distinguishes *Aucutt* on the ground that the court in that case lacked evidence of medical records, long-term impact, or hinderance to everyday activities; similarly, he argues that the *O'Dell, Lowe* and *Otis* courts lacked evidence that plaintiff suffered from any marked limitations outside of the work setting.[3] In the present case, plaintiff's restrictions of lifting and standing impact both his work and recreational life. However, some restriction is insufficient; plaintiff cannot be covered under the ADA unless he suffers substantial limitation of a major life activity.

In *Czopek,* the plaintiff, a temporary employee, worked four weeks of light duty after suffering a heart attack, then resumed his regular duties. A subsequent medical examination concluded that the plaintiff should avoid strenuous work and heavy lifting. Plaintiff was terminated shortly thereafter. The *Czopek* court found that the plaintiff had failed to produce evidence that he was restricted in performing a class of jobs or a broad range of jobs in various classes as compared to the average person of comparable training, skills and abilities; instead, the defendant had produced evidence that the plaintiff had performed other manual labor positions since his injury.

■ Vaughan argues that, unlike the plaintiff in *Czopek,* his injury left him unable to perform a broad class of manual jobs, specifically those involving heavy labor. The ADA standard of a class or broad range of jobs, is not easily met; further, the job class, manual labor employment, is not limited to heavy manual labor jobs. *See Howard v. Navistar International,* 904 F.Supp. 922 (D.Wis.1995) (finding that restrictions from performing a class of jobs requiring use of manual or air wrenches to tighten down castings, insufficient to establish inability to perform a "class of jobs or a broad range of jobs in various classes," as mandated under the ADA).

■ Vaughan has worked at four different jobs (security guard, tractor driver, cement truck driver, vinyl siding installer) since leaving employment with defendants. His current job as a cement truck driver clearly falls under the manual labor category, with duties ranging from driving, loading and washing. While the ADA regulations define a major life activity to include working, "this does not necessarily mean working at the job of one's choice." *Bolton v. Scrivner,* 36 F.3d 939, 942 (10th Cir.1994) (quoting *Welsh v. City of Tulsa,* 977 F.2d 1415, 1417 (10th Cir.1992)). Similarly, Vaughan's physical impairments require him to rest often, and to lift only light objects; however, plaintiff has not demonstrated that such impairments have done more than restrict him from shopping for long periods of time, or from picking up his child, who weighs more than twenty pounds. While such impairments are undoubtedly inconvenient for plaintiff, they do not rise to the level of substantial limitation to a major life activity, as required under the ADA.[4]

3. Plaintiff appropriately distinguishes *Avnet* from the present matter, on the grounds that the *Avnet* court used the Fourth Circuit's "general foreclosure" test, which test has not been considered by the Sixth Circuit. The general foreclosure test is a "strong variant of the substantial impairment test." Under this test, if the accommodation is unreasonable, or would not render the employee fully qualified for the position, then the employee has failed to state a claim under the ADA. *Avnet,* 910 F.Supp. at 1131.

4. In his Opposition, plaintiff asserts for the first time that he meets the statutory definition of disabled because he has a record of impairment, and because he was regarded as being impaired. First, for the reasons discussed, plaintiff fails to present evidence of a history of, or having been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities, as required under Section 1630.2(k) of the EEOC's Rules and Regulations.

Second, the EEOC Rules and Regulations define "regarded as having such an impairment" as follows: (1) having a physical or mental impairment that substantially limits major life activities by being treated by a covered entity as constituting such limitation; (2) having a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) not having a physical or mental impairment but is being treated by a covered entity as having sub-

■ Even assuming plaintiff's injury was a disability under the ADA, plaintiff fails to meet the second prong of the prima facie case, which requires that plaintiff demonstrate that he is a qualified individual. Under the ADA, a "qualified individual with a disability" is an individual with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA specifically provides that "consideration shall be given to the employer's judgment as to what functions of the job are essential." Defendants contend that plaintiff is not qualified for the position of lead die cast setup man because plaintiff could not perform essential functions of the job. Plaintiff argues that defendants are estopped from claiming that he was not capable of performing the job, as they testified that plaintiff could have continued working for the company under the restrictions imposed by his doctor.

■ Title I of the ADA addresses disability discrimination by employers. Section 102(a) of Title I of the ADA states that "no covered entity shall discriminate against a qualified individual with a disability . . . ." 42 U.S.C. § 12112(a). A qualified individual with a disability is defined, in pertinent part, as:

> an individual *with a disability* who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. (emphasis added).

42 U.S.C. § 12111(8). The plain language of the Act clearly indicates that the ADA was designed to afford relief only to those individuals with disabilities who can perform the essential functions of the job that they hold or seek. *See Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547 (D.Kan.1995). Courts interpreting the ADA have found that only persons with disabilities who are "qualified"

for the position they hold or desire may state a claim for discrimination under the Act. *See Tyndall*, 31 F.3d 209; *See also Ethridge v. State of Alabama*, 860 F.Supp. 808 (M.D.Ala.1994).

Plaintiff states in response to defendants' summary judgment motion and in sworn testimony, that he could perform each of the essential functions of his job, *with the exception* of lifting, bolting, and adjusting involved in setting up the die cast machines and relieving the D/C operators. (Plaintiff's Opposition, 3; Plaintiff's 1995 dep. 287–91.) Plaintiff does not dispute that lifting, bolting and adjusting are essential functions of the job; however, plaintiff does contend that he could perform the essential functions of the job with the reasonable accommodations of obtaining assistance from subordinates. (Plaintiff's Opposition, 22.)

■ The ADA does not require employers to modify the actual duties of a job in order to make an accommodation for individuals who are not physically capable of performing them. *Kuehl v. Wal–Mart Stores, Inc.*, 909 F.Supp. 794 (D.Col.1995.) Nor does the ADA require an employer to provide an employee with alternate employment if the employee does not meet the demands of his present position. *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir.1995).

In *Nguyen*, where the plaintiff argued that he was qualified under the ADA because he could perform the duties of his temporary light duty position, the court explained the accommodation requirements under the ADA:

> Reasonable accommodation . . . does not require that an employer create a light duty position or a new permanent position . . . If the position was created as a temporary job, the reassignment to that position need only be for the temporary period of the job. Therefore, if a light duty job is a temporary job, reassignment to that job

stantially limiting impairment. 29 C.F.R. 1630.2(*l*). To support his claim, plaintiff relies on Ennis' statement, the separation notice, and on statements by company officials that they had no light duty positions available. Ennis' statement does not identify what risk plaintiff posed or to what or whom Ennis referred, and as such,

cannot support plaintiff's claim. Further, plaintiff himself requested light duty work and cannot now claim that defendants' reference to or search for light duty work for plaintiff indicates defendants' illegal discrimination against plaintiff.

need only be for the temporary period of the job, and an employer need not convert a temporary job into a permanent job.

*Hong Van Nguyen v. IBP., Inc.,* 905 F.Supp. 1471, 1486 (D.Kan.1995.)

■ In the present matter, plaintiff had only three subordinates, and therefore, any accommodation of assistance from other employees significantly altered the nature of the lead die cast setup man position. Plaintiff's supervisor testified that plaintiff could not fully perform his job by getting assistance from others; the duties were such that the company would need to keep an "extra body" around to accommodate plaintiff, and any assistance from the operators "would stop the machine and would waste money." (Sanders dep. 65–68.) Defendants hired a second man to perform the lead man job while plaintiff took time off work; when plaintiff returned that man stayed on in the same position and assisted plaintiff in his duties. While the company thereby accommodated plaintiff, it was not required to do so, nor is it required to continue to have two individuals in a position that was developed for only one person. Similarly, such accommodation, light duty, or any assurance by defendants that plaintiff's medical restrictions could be accommodated, does not estop defendants from asserting that plaintiff was not fully qualified for the position. Ability to perform the essential functions of a job under the ADA is distinct from a personal choice made by a company to accommodate an employee. Finally, plaintiff identifies no permanent positions with defendants to which he could be reassigned without displacing another employee; nor does he show he is qualified for a position with defendants (for instance, his claim that he could perform the duties of tool crib attendant and line inspector was contradicted by Sanders and Ennis). (Sanders dep. 70–71; Ennis dep. 117–20.)

As the ADA does not require an employer to hire another employee, reassign other employees, or to make any other unreasonable accommodation to enable an employee to perform the essential functions of his job, the Court finds that plaintiff is not qualified under the ADA.

**B.** *Plaintiff's Retaliatory Discharge Case for Filing a Worker's Compensation Claim*

■ To establish a prima facie case of retaliatory discharge for filing a worker's compensation claim, the burden is on plaintiff at all times to prove the following: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for worker's compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for worker's compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Anderson v. Standard Register Company,* 857 S.W.2d 555, 558 (Tenn.1993).

■ The *Anderson* court explained,

The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including the causal relationship between the claim for worker's compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury. However, proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of showing a legitimate, nonpretextual reason for the employee's discharge ...

*Id.* Plaintiff can show the causal link by direct or by sufficient indirect evidence. To do so, plaintiff must demonstrate some proof of causation other than the facts showing employment, the exercise of rights under the worker's compensation act, and a subsequent discharge. *Thomason v. Better–Bilt Aluminum Products,* 831 S.W.2d 291 (Tenn.App. 1992.)

■ Plaintiff rests his retaliatory discharge claim on four bases: (1) he was a good employee and could think of no other reason for his termination[5]; (2) Ennis' state-

---

**5.** Plaintiff gave the following deposition testimony:

Q: So you say you think the reason the company terminated you is because you had the

ment that the company would rather pay him worker's compensation benefits than return him to work because he was "too big of a risk" to the company; (3) the reference in his separation notice to his injury; and (4) the proximity in time between his discharge and the settlement of his worker's compensation claim. Defendant argues that these bases fail to support a claim of retaliatory discharge because plaintiff cannot satisfy the fourth factor for a retaliatory discharge claim, and defendants have a legitimate non-pretextual reason for terminating plaintiff.

Plaintiff's contentions are too speculative to establish the required causation under a retaliatory discharge claim. First, causation cannot be established simply because plaintiff cannot think of any other reasons for his discharge. *See Thomason,* 831 S.W.2d at 293 (finding no case for retaliatory discharge where plaintiff testified she did not know why her employer fired her, and did not present proof of causation); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir. 1986) (subjective beliefs and speculation are insufficient to create the requisite causal relationship.)

Second, Ennis' statement is ambiguous, and does not provide any direct connection to plaintiff's worker's compensation claim. The statement that plaintiff is "too big of a risk" to the company could refer to plaintiff's physical injuries; in fact, plaintiff makes this very argument to support his claim that he was regarded by defendants as impaired. (Plaintiff's Opposition, 7.) Similarly, plaintiff's separation notice makes no reference to plaintiff's worker's compensation charge; instead, it refers only to plaintiff's physical limitations and available light duty employment. (Ex. 4.) As proof of causation necessarily requires that the evidence link the worker's

compensation claim to the adverse employment action, neither Ennis' statement nor plaintiff's separation notice (nor both in combination) provides sufficient indirect evidence and thus, cannot support plaintiff's retaliatory discharge claim. *See Burns v. Schuller International, Inc.,* 1995 WL 405087, *6 (Tenn.App.1995) (citing *Anderson,* 857 S.W.2d at 558, "the plaintiff must also show the causal link by direct evidence [citations omitted]; or by compelling circumstantial evidence, *see, e.g., Arie v. Intertherm, Inc.,* 648 S.W.2d 142 (Mo.App.1983)"); *Johnson v. Saint Francis Hospital, Inc.,* 759 S.W.2d 925 (Tenn.App.1988).

■ Finally, the proximity in time between plaintiff's termination and the settlement of his worker's compensation claim does not satisfy the causation requirement. First, plaintiff has not explained why the *settlement* of his claim, as opposed to plaintiff's filing of the claim, would prompt his termination. Second, Ennis testified that he was unaware of the settlement at the time he made the decision to terminate plaintiff. (Ex. A.) Most importantly, evidence of proximity in time between a worker's compensation claim and an adverse employment action is not sufficient to overcome a summary judgment motion in a retaliatory discharge case. *Conatser v. Clarksville Coca–Cola Bottling Co.,* 920 S.W.2d 646 (Tenn.1995) (citing 2A Arthur Larson, The Law of Workmen's Compensation, § 68.36(c), p. 13–318 (1994), and rejecting plaintiff's claim that his discharge three days after returning to work sufficed for the causation requirement of a prima facie case of retaliatory discharge).

■ Even assuming plaintiff established a prima facie of retaliation, he has not

---

lawsuit against them, the worker's comp lawsuit. On what do you base that? ...
A: I don't know. I mean I was a good worker and everything. I had no reason to be laid off.
Q: Is there any other reason you think that?
A: No, sir....
Q: Do you have any facts to support your belief?
A: You can check my work record ...
Q: Now, you obviously believe that they did this because you had the worker's comp case pending.

A: I think that had a lot to do with it, yes, sir.
Q: What makes you think that? Is it just speculation on your part?
A: Well, my job record was fine, and there was no other reason for them to do that.
Q: So because you can't think of another reason, it must have been because of that reason; is that what you're saying?
A: Yes, sir.
(Ex. B, 238–39.)

shown that defendants' stated reason for his termination is pretextual. An employee may challenge an employer's valid, non-retaliatory reason for termination. In the present matter, defendants argue that plaintiff was physically incapable of performing the essential functions of his previous position; plaintiff objects to this reason, stating that defendants had a duty to accommodate him. A legitimate, nonpretextual reason may involve physical inability to do the job. *Anderson,* 857 S.W.2d at 559. Plaintiff cannot rebut such a legitimate offer by making an argument under a separate cause of action, specifically, the ADA. Instead, plaintiff must show that his worker's compensation claim was the true or substantial reason for his discharge, not his injury. As plaintiff has failed to make such a showing, he has not carried his burden of demonstrating retaliatory discharge for raising a worker's compensation claim.

For the above reasons, the Court GRANTS plaintiff's summary judgment motion as to plaintiff's ADA and retaliatory discharge claims. This case is hereby DISMISSED.

SO ORDERED.