IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## TERRY TRAYLOR, v. NORTH AMERICAN ROYALTIES, INC. d/b/a WHELAND FOUNDRY,

**Appeal from the Circuit Court for Hamilton County**
**No. 98-C-0648   Hon. Samuel H. Payne, Judge,**

### No. E1999-00709-COA-R3-CV - Decided April 24,  2000

Plaintiff, Terry Traylor, alleged in his Complaint that he was terminated from his job at Wheland Foundry because he filed a workers' compensation claim for benefits. Defendant, North American Royalties, Inc., d/b/a/ Wheland Foundry, filed a Motion for Summary Judgment.  At the hearing on that Motion, Defendant argued that it fired Plaintiff in accordance with the company's Absence Control Program and not because of his workers' compensation claim. The Trial Court granted the Defendant's Motion for Summary Judgment.  In this appeal, Plaintiff argues that there are genuine issues of material fact requiring a trial, and, therefore, the Trial Court erred in granting Defendant's Motion for Summary Judgment.  The judgment of the Trial Court is affirmed.

## Tenn. R. App. 3; Judgment of the Circuit Court Affirmed and Remanded.

SWINEY, J., delivered the opinion of the court, in which FRANKS, J., and SUSANO, J., joined.

Walter E. Grantham, III, Chattanooga, Tennessee, for the appellant, Terry Traylor.

Christopher H. Steger and Stacie L. Caraway, Chattanooga, Tennessee, for the appellee, North American Royalties, Inc., d/b/a/ Wheland Foundry.

### OPINION

#### Background

Terry Traylor began working for Wheland Foundry ("Wheland" or "Defendant") in January 1994 as a general laborer.  On February 28, 1995, he injured his left knee and left shoulder at work, necessitating surgery.  He was placed on leave of absence from work for almost two years, from March 1995 until January 22, 1997. He returned to work four hours a day on January 22, 1997. He increased his work to six hours a day three weeks later, and to full eight-hour work days two

weeks after that. His work-related injury resulted in a workers' compensation settlement between Mr. Traylor and Defendant which was memorialized by entry of Judgment on February 19, 1997.

After Mr. Traylor returned to work, he missed work or was late to work on a number of occasions. This brought him under the scrutiny of Sandy Reynolds, the "points lady," Defendant's representative whose job as paymaster includes the duties of keeping attendance records and applying the Absence Control Program.

Defendant's Absence Control Program provides that each absence results in one absenteeism point being charged against the employee's attendance record. Certain types of absence are excluded from being charged as points.[1] Even though absence due to workers' compensation injury is not charged as a point, the absence is attributed to workers' compensation injury only if the employee brings in a doctor's excuse. If an employee maintains perfect attendance and is not tardy for one calendar month, one-half point is removed from his total. If an employee acquires eight absenteeism points in one year, the employee is terminated. The system also provides for warning notices to the employee when he has accumulated five, six and seven points. These notices are provided to the employee by his supervisor, who explains the notice, the policy and the consequences. The system is explained to all employees in a brochure they receive when hired. Mr. Traylor received this brochure and knew that he could be terminated for absences under the system. He was also counseled about this by his supervisor.

Mr. Traylor received his first Disciplinary Report on February 27, 1997. That report enumerated five points which had accrued against him for absences on January 24, 31, February 5, 7 and 12, 1997. He received a second Disciplinary Report on March 4, 1998. That report indicated that the points for January 24 and 31 had been removed but three more points had been added, for February 14, 19 and 21. On March 5, 1997, Mr. Traylor received a third Disciplinary Report, which deleted the point for February 12 but added points for February 26 and February 28. Mr. Traylor received no more Disciplinary Reports for six months. Then on September 4, 1997, he was given a final Disciplinary Report which stated that he was terminated for accumulating the maximum eight points. The final Disciplinary Report indicated twelve chargeable absences as follows, with the dates lined through being the points charged but later removed:

| | |
|---|---|
| ~~January 24, 1997~~ | February 28, 1997 |
| ~~January 31, 1997~~ | April 14, 1997 |
| February 5, 1997 | April 17, 1997 |
| February 7, 1997 | April 24, 1997 |
| ~~February 12, 1997~~ | June 2, 1997 |
| February 14, 1997 | June 5, 1997 |
| ~~February 19, 1997~~ | June 23, 1997 |

---

[1]Approved leaves of absence, vacation, paid holidays, in-patient hospitalization, out-patient surgery, jury duty, court appearances (for employees not found in violation of the law), funeral leave (per Contract), workers' compensation injury, and union business.

February 21, 1997          July 14, 1997

February 26, 1997          July 30, 1997

Mr. Traylor was given the final Disciplinary Report and notified of his termination in a personal meeting with the Human Resource Manager, Mr. Clay Roberts. Mr. Roberts was deposed and testified that:

> Like in anything else, I told Terry that if any of the absences were not correct, he needed to bring me some documentation to show that, and then we would review it, and if there were some errors, then we would put him back on the job . . . . He brought in some information . . . . I reviewed the absences based on the information he brought in . . . . and I did pull some points off, but he still had in excess of eight . . . . We contacted physicians after Mr. Traylor was discharged to confirm, yes, whether the employee was to be at work or if he wasn't.

When deposed, Mr. Traylor stated that each time he received a Disciplinary Report, he notified the union steward or the Defendant's representative that the points were incorrect because he had been absent for treatment of his work-related injury. He was reminded that a doctor's excuse was required, and in some instances, he was able to obtain such an excuse. In other instances, doctor's excuses already turned in were found in the office. As to those absences, Sandy Reynolds, Defendant's representative told him, "Don't worry about it [the Disciplinary Report.]" Mr. Traylor testified that this statement by Ms. Reynolds led him to believe that there were no points remaining against him. However, the only points which had actually been removed from his attendance record were the points for those absences which matched with doctor's excuses. Mr. Traylor also testified that he may not have produced doctor's excuses for each of his work-related absences, but he did report in. We reproduce his testimony on this point:

Q:    Did you ever produce any medical excuse indicating why you had to be off work on February 7, 1997?

A:    I don't know if I did. But anytime I was out I called in because the nurse told me to call her, so I called the nurse. And she said if I was on my medicine or didn't sleep none and report an absence, she told me to call her. And she told me I couldn't come to work taking my medication.

Q:    But it was your understanding that if you were going to miss work and you wanted it to be excused, you had to bring in a medical excuse?

A:    You had to call in, yeah.

Q:    Didn't you have to bring in a medical excuse?

A:    Well, not when you're on workmen's comp. She said I could just call her.

-3-

Mr. Silas Passmore, another employee of Wheland Foundry, who has filed suit against the company for workers' compensation benefits, provided an Affidavit in which he stated, in part:

> I have been advised by Rick Roberts to contact the staff nurse at Wheland Foundry when I was unable to work due to my worker's compensation injury and/or due to medications taken for my worker's compensation injury and, in fact, I have contacted the company nurse for those reasons and she has discharged me and sent me home which were considered excused absences not resulting in the assignment of points.

Mr. Tony Troutman, President of the Local 3967, United Steelworkers of America serving Wheland Foundry, provided an Affidavit in which he stated, in part:

> 5. During 1997, the company nurse did exercise her discretion as to whether an employee who had received an on-the-job injury should come in to work and/or be allowed to leave work due to difficulties related to those on-the-job injuries and/or medications taken for those injuries.

> 6. During 1997 Sandy Reynolds had the authority to remove points from an employee's record.

> 7. Points given to a Wheland employee are considered untimely if the progressive point warnings are not issued as the points occur. At least one (1) Wheland employee who was terminated for excess points due to absences has been returned to work due to those points being untimely.

> 8. There has been a history of documents getting lost at Wheland Foundry, including absence excuses given by employees.

The Trial Court held a hearing on Wheland's Motion for Summary Judgment. The Trial Court reviewed Wheland's Motion, the Memorandum in Support of the Motion, Wheland's Statement of Undisputed Facts, portions of the depositions of Mr. Traylor, Clay Roberts and Tony Clark, Mr. Traylor's Brief in Opposition to the Motion, Mr. Traylor's Response to Movant's Citation of Material Facts, the Affidavits of Silas Passmore, Terry Traylor and Tony Troutman, and the pleadings on file. The Trial Court found there was no genuine issue of material fact, granted Wheland's Motion for Summary Judgment on all issues, and dismissed the case with prejudice.

**Discussion**

Mr. Traylor appeals and states three issues on appeal, which we restate as questioning whether the Trial Court erred in finding that there were no genuine issues of material fact and granting summary judgment to Wheland.

When evaluating a motion for summary judgment, the Trial Court should consider "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial." *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993). A fact is "material" for summary judgment purposes, if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Tenn. R. Civ. P. 56.01; *Luther v. Compton,* 5 S.W.3d 635 (Tenn. 1999). No presumption of correctness attaches to decisions granting summary judgment when they involve only questions of law. *Hembree v. State,* 925 S.W.2d 513 (Tenn. 1996); Tenn.R.App.P. 13(d). The Court of Appeals must view the evidence in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. *Gray v. Amos,* 869 S.W.2d 925 (Tenn. Ct. App. 1993).

Our Supreme Court discussed the analysis applicable in cases of alleged retaliatory discharge for filing a workers' compensation claim in *Anderson v. Standard Register Company,* 857 S.W.2d 555 (Tenn. 1993):

> Based on the principles stated in *Clanton v. Cain-Sloan Co., Chism v. Mid-South Milling Co., Inc.,* and *Johnson v. Saint Francis Hosp., Inc.,* the following elements are found to establish a cause of action for discharge in retaliation for asserting a workers' compensation claim: (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.
>
> The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury. However, proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of showing a legitimate, non-pretextual reason for the employee's discharge. As stated in 2A A. Larson, *The Law of Workmen's Compensation,* § 68.36(d), pp. 188-191 (1990):

> Once the employee has made a *prima facie* case of retaliation, the burden devolves upon the employer of proving a legitimate nonpretextual nonretaliatory reason for the discharge. The reason may involve the employee's own shortcomings, such as unexplained tardiness, excessive absenteeism, lying as to previous compensation claims, or physical inability to do the job. . . .

*Anderson v. Standard Register,* 857 S.W.2d at 558-559, citing *Clanton v. Cain-Sloan Co.,* 677 S.W.2d 441 (Tenn. 1984); *Chism v. Mid-South Milling Co.,* 762 S.W.2d 552 (Tenn. 1988); *Johnson v. St. Francis Hospital, Inc.,* 759 S.W.2d 925 (Tenn. Ct. App. 1988).

Applying the required analysis, this Court has described the proof required to establish a causal relationship between the employee's filing of a workers' compensation claim and the employer's termination of that employee from his job:

> . . . in order to establish the element of causation, the plaintiff must present some proof other than merely the facts showing her employment, her exercise of rights under the Workers' Compensation Law, and her subsequent discharge. *Thomason v. Better-Bilt Aluminum Prods., Inc.,* 831 S.W.2d 291, 293 (Tenn. App. 1992). The plaintiff may accomplish this goal either by presenting direct evidence of the necessary causal link or by introducing compelling circumstantial evidence of such a link.
>
> Various courts have considered what type of circumstantial evidence will support the necessary causal link. For example, a plaintiff cannot establish causation by testifying that she cannot think of any other reason for her discharge. *Vaughan v. Harvard Indus., Inc.,* 926 F.Supp. 1340, 1350 (W.D. Tenn. 1996). The plaintiff's subjective beliefs or speculations are insufficient to create the requisite causal relationship. *Id.* (citing *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 268 (6th Cir. 1986) (indicating that mere personal beliefs, conjecture, and speculation were insufficient to support inference of age discrimination), cert denied, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)).
>
> Moreover, a plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge. *Vaughan v. Harvard Indus.,* 926 F.Supp. at 1351. Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge. *Id.;* see also

-6-

> *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993) (holding that plaintiff failed to establish causal relationship where she testified that she had "been out so long" that her employer "didn't have time to wait").

*Reed v. Alamo Rent-A-Car, Inc.,* 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999).

This Court, in *Reed,* found that the plaintiff's testimony "merely expressed her subjective belief that she would not have been fired had she not had knee surgery or filed a workers' compensation claim." We held that her subjective beliefs and speculations were insufficient to create the requisite causal relationship in her claim for wrongful discharge. In addition to disregarding mere speculation, we are constrained to consider only "direct or compelling circumstantial evidence" of causation in order to find that a jury trial is warranted:

> [i]n order to get to the jury . . . the plaintiff must also show the causal link by direct evidence (as where the employer has an established policy, or where the employer admits the reason for the termination, or by compelling circumstantial evidence.

*Thomason v. Better-Bilt Aluminum Products, Inc.,* 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992) [citations omitted].

In brief, to answer the question of whether a trial was in order in this case, we first review the facts before the Trial Court to determine whether Mr. Traylor has provided direct or compelling circumstantial evidence that a substantial factor in his termination was his filing of a workers' compensation claim for benefits. Proof that his injury caused the termination is not sufficient. Mr. Traylor must prove the causal link between his filing of a workers' compensation claim and his termination. We disregard mere personal beliefs, conjecture and speculation. We view the direct and circumstantial evidence in the light most favorable to Mr. Traylor and draw all legitimate conclusions of fact in favor of him. If we find proof of a causal link between his workers' compensation claim and his termination, the burden shifts to the employer. The employer must then show a legitimate, nonpretextual reason for Mr. Traylor's termination. Unexplained tardiness or excessive absenteeism are among the nonpretextual reasons which are sufficient to rebut an employee's *prima facie* showing of retaliatory discharge.

The facts in this record show that Mr. Traylor was employed by Wheland, made a claim for workers' compensation benefits, and was terminated. The facts also show that he was terminated in accordance with the terms of the Attendance Control Program, which applies to all Wheland employees. The facts show that he accumulated eight or more unexcused absences, which is grounds for termination. Defendant testified that Mr. Traylor was fired for acquiring eight points and not for filing a workers' compensation claim. While Mr. Traylor testified that he thought all points against him had been removed, we disregard his personal beliefs as having no evidentiary value for our purposes. Mr. Traylor further testified that he thought the nurse excused him from working when he called in. Again, his personal beliefs are not considered for our purposes. Another employee, Silas Passmore, provided an Affidavit in which he stated that he had been given excused absences after the company nurse "discharged me and sent me home." We observe that leaving

-7-

work with permission of the nurse is not the same scenario as failing to report to work. Mr. Troutman, United Steelworkers local President, provided an Affidavit in which he stated that in 1997, "the company nurse did exercise her discretion as to whether an employee who had received an on-the-job injury should come in to work. . . ." He did not allege, however, that such absences were excused. The evidence as a whole indicates that the nurse's discretion was to see that no employee came to work under the influence of ability-inhibiting medication. There is no evidence that a doctor's excuse was not still required for an absence to be counted as excused.

Much was made by Mr. Traylor of the fact that Defendant assigned points to Mr. Traylor and removed them later, as doctor's excuses were turned in or found in the office by the "points lady." Mr. Traylor also complains of being allowed to work for several months beyond the date on which he acquired his eighth point before being notified that he was terminated. We find these arguments unpersuasive. Despite Defendant's admitted delays in posting disciplinary points, occasioned by vacations, mislaid documents and other reasons, the fact remains that Defendant's policy provides for termination when eight points have accumulated. Mr. Traylor has provided no evidence to show that he has less than nine legitimate disciplinary points. More to the point, he has provided no direct or compelling circumstantial evidence that his filing a workers' compensation claim was a substantial cause, or was a factor to any degree whatsoever, in his termination. Neither this Court nor the Trial Court need determine whether Mr. Traylor, in fact, had eight or more legitimate disciplinary points. The employer may have been mistaken in its count. We need not address that possibility. Rather, the question before us is only whether there is a genuine issue of material fact as to whether or not Mr. Traylor's filing of a workers' compensation claim was a substantial factor in Defendant's decision to terminate him. Mr. Traylor has failed to provide direct or compelling circumstantial evidence of a retaliatory basis for his termination, and Wheland has provided direct evidence of a nonpretextual basis for that termination. Summary judgment for Wheland was proper.

## Conclusion

The judgment of the Trial Court is affirmed and this cause remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Terry Traylor.